UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED SERVICES ] | |
| AUTOMOBILE ASSOCIATION, ] | |
| ] | |
| Plaintiff, ] | |
| ] | CV-04-BE-1324-S |
| v. ] | |
| ] | |
| MITCHELL VAN GLAZE, et al., ] | |
| ] | |
| Defendants. ] | |

**MEMORANDUM OPINION**

Before the court are Plaintiff United Services Automobile Association's Motion for Summary Judgment (Doc. 17) and Defendant Safeco Insurance Company's Motion to Strike Exhibits Filed in Support of Plaintiff's Motion for Summary Judgment (Doc. 20).  For the reasons stated below, the court orders as follows:

1.) The court denies Safeco's motion to strike Sherry Foxx's affidavit.  The court will not rely on the unsigned copy of the affidavit attached to USAA's summary judgment motion.  However, the court will consider the properly sworn and notarized copies of that affidavit submitted by USAA on June 2 and 17, 2005. *See Plaintiff's Supplemental Evidentiary Submission*, Doc. 19, *and Plaintiff's Response to Motion to Strike*, Doc. 23, Ex. A;

2.) the court denies as moot Safeco's motion to strike as to the transcripts of telephone conversations that were properly authenticated and resubmitted on July 29, 2005. *See Plaintiff's July 29, 2005 Evidentiary Submission*, Doc. 29;

1

3.) the court denies as moot Safeco's motion to strike the first copy of the insurance policy from the summary judgment record. The court will not rely on the unauthenticated copy of the policy attached to USAA's summary judgment motion. However, the court will consider the certified copy of the policy submitted by USAA on June 17, 2005 as Exhibit C to its response to Safeco's motion to strike. *See* Doc. 23, Ex. C; and

4.) the court grants the motion for summary judgment and dismisses the case with prejudice, costs taxed as paid.

## I.  PROCEDURAL BACKGROUND

In a separate action, Mitchell Van Glaze and Lonnie D. Glaze filed suit against Earl Foxx, his sister, Sherry Foxx, and Safeco Insurance Company of America, for injuries sustained in an October 25, 2001 automobile accident in which Earl Foxx was driving Sherry Foxx's car.  *See Glaze v. Fox* [sic], CV-03-RRA-3177-S (N.D. Ala.). At the time of the accident, Sherry Jean Foxx had an automobile insurance policy with United Services Automobile Association. The policy covered any person using her insured car, except when that person used the car "without express or implied permission." *See* Doc. 22, Ex. B, *Foxx's USAA Insurance Policy*, pp. 4-5.

USAA filed this action for declaratory judgment against Sherry Foxx and Safeco Insurance Company,[1] seeking a declaration that it owes no coverage for the Glazes' claims

---

[1] The court assumes–although the complaint the case before it does not so state–that Safeco's interest arises from its provision of uninsured motorist coverage that would be triggered if the USAA policy does not provide coverage for the accident. USAA also named Mitchell Van Glaze and Lonnie D. Glaze as Defendants, but on January 17, 2005, USAA moved for the dismissal of the Glazes because they were not parties to the USAA insurance contract at issue here and were not essential to this case. *See Motion to Dismiss Without Prejudice*, Doc. 9. On January 20, 2005, the court granted USAA's motion to dismiss the Glazes. *See January 20, 2005 Order Granting Motion to Dismiss.*

against Earl Foxx. On May 13, 2005, USAA submitted a motion for summary judgment, arguing that no genuine issue of fact exists and that Sherry Foxx undisputably did not give Earl Foxx permission to drive her car. Therefore, USAA argues, because the policy specifically states that USAA owes no coverage for people operating the vehicle "without express or implied permission," *see* Doc. 23, Ex. C, *Foxx's USAA Insurance Policy*, pp. 4-5, USAA is entitled to judgment as a matter of law that it owes no coverage for the Glazes' claims against Earl Foxx. In response, Safeco argues that, although Sherry Foxx did not expressly tell Earl Foxx he had permission to drive her car, Sherry Foxx's habit of occasionally allowing him to sit in the car and listen to the radio with the keys in the ignition raises a factual question as to whether she gave Earl her implied permission to drive the car. *See Safeco's Reply Brief*, Doc. 21, at 3-4.

In support of its motion for summary judgment, USAA submitted, *inter alia*, the following evidence:

(1) an unsigned "affidavit" of Sherry Foxx that was not notorized, in which Ms. Foxx stated that Earl Foxx was using her car without her knowledge and permission at the time of the accident, *see* Doc. 17, Ex. D;[2]

(2) a document that purports to be a transcribed telephone conversation between Sherry

---

[2]In its motion for summary judgment, USAA acknowledged that the Sherry Foxx affidavit was deficient, and stated,
> With the Court's permission, counsel for defendant Foxx has agreed to allow this unsigned affidavit to be submitted in order to avoid unnecessary delay or modification of the Court's Scheduling Order. A signed copy will be submitted when received by the plaintiff from defense counsel.

*Motion for Summary Judgment*, Doc. 17, p. 2 n.1.

As promised, as detailed *infra*, USAA subsequently filed a signed, notarized copy of Sherry Foxx's affidavit. *See Supplemental Evidentiary Submission in Support of Plaintiff's Motion for Summary Judgment* (Doc. 19).

> Foxx and Phyllis Henry, a USAA employee, in which Sherry Foxx stated that Earl Foxx had never driven her car before and did not have permission to drive her car, *see* Doc. 17, Ex. E
>
> (3) a document that purports to be a transcribed telephone conversation between Earl Foxx and Phyllis Henry, in which  Earl Foxx stated that Sherry Foxx did not give him permission to drive the car, and that he had never driven the car before , *see* Doc. 17, Ex. F,
>
> (4) an unauthenticated copy of Sherry Foxx's USAA insurance policy, *see* Doc. 17, Ex. B.

On June 2, 2005, USAA submitted a "Supplemental Evidentiary Submission in Support of Plaintiff's Motion for Summary Judgment" (Doc. 19), which consisted of a signed, notarized copy of Sherry Foxx's affidavit that was otherwise identical to the affidavit attached to the motion for summary judgment.  Safeco did not object to USAA's submission of a proper copy of the affidavit in support of the summary judgment motion.

On June 8, 2005, Safeco filed a motion to strike from the summary judgment record the unsigned affidavit attached to the summary judgment motion, the documents that purport to be transcribed telephone conversations, and the unauthenticated copy of Sherry Foxx's USAA insurance policy.  Safeco argues that the affidavit is inadmissible because the affidavit is not sworn or certified, and because, Safeco alleges, the affidavit is not based on personal knowledge as required by Federal Rule of Civil Procedure 56(e).  Safeco also argues that the recorded statements and the insurance policy are not admissible because they are not sworn or certified, either.

In response to Safeco's motion to strike, USAA argues that Sherry Foxx's affidavit is based on personal knowledge, and submitted another signed, notarized copy of the affidavit along with a certified, authenticated copy of the insurance policy.  USAA did not initially address Safeco's objections to the documents that appear to be transcribed telephone conversations between Sherry Foxx and a USAA employee.

### A.  *Sherry Foxx's Affidavit*

Under Rule 56(c) and (e),

> the [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....  Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

The original affidavit attached to the summary judgment motion was not signed or otherwise certified or authenticated, and, therefore, is not really a true affidavit.  *See Black's Law Dictionary* 22 (2nd pocket ed. 2001) (defining an affidavit as "a voluntary declaration of facts written down and <u>sworn to</u> by the declarant before an officer authorized to administer oaths, such as a notary public." (emphasis added)).

However,  the court will not strike the original "affidavit" based on Safeco's argument that the affidavit is not sworn or notarized, although, in ruling on the motion for summary judgment, the court will not rely on the unsworn, non-notarized copy of the "affidavit" attached to the summary judgment motion.   Instead, the court will rely on the properly sworn and notarized copies of the affidavit now before the court in two different places in the record.  *See*

*Plaintiff's Supplemental Evidentiary Submission*, Doc. 19, *and Plaintiff's Response to Motion to Strike*, Doc. 23, Ex. A; *see also Gordon v. Watson,* 622 F.2d 120, 123 (11th Cir. 1980) (noting that a court may not consider an unsworn statement in support of a motion for summary judgment). Safeco has not objected to the filing of either of those signed, notarized copies of the affidavit. Moreover, the Eleventh Circuit has held that

> [s]ummary judgment is an excellent device by which district courts may make expedited dispositions of those cases in which a trial would be fruitless. When summary judgment is inappropriate because the supporting or opposing materials are improper, the district court has ample discretion to call upon the parties to remedy the defects, by submitting supplemental affidavits or otherwise.

*Watson,* 622 F.2d at 123.

Thus, denying summary judgment because of an easily-corrected, technical flaw in the evidence would fly in the face of the underlying purpose of summary judgment and potentially subject the court and the parties to the unnecessary burden of taking claims and factual issues to trial that could have been determined far more expeditiously. Further, USAA acknowledged when it originally submitted the unsigned affidavit that it would submit the signed affidavit when received, and it did so. Therefore, the court will allow USAA to correct the defect in the improper affidavit and will consider the sworn, notarized copies of the affidavit in place of the affidavit originally submitted with the motion.

Safeco's argument that Sherry Foxx did not base the statements in her affidavit on her personal knowledge is without merit. Though Sherry Foxx did not preface her statements with the usual incantation that all the statements in the affidavit were based on her personal knowledge, Sherry Foxx's statements clearly reflect her personal knowledge, and are not based

6

on hearsay, information and belief, conjecture, or any other improper source of knowledge. She swore that she was a defendant in the case brought against her by the Glazes, that she owned the insured car, and that Earl Foxx took her car without her permission--statements that, by their very nature, would have to be based on her personal knowledge. Further, she swore that, *to her knowledge*, Earl Foxx had never driven the car before the accident. Moreover, in its response to the motion to strike, USAA demonstrated through Sherry Foxx's deposition testimony from the case brought by the Glazes that she had personal knowledge of the facts in the affidavit. *See* Doc. 23, Ex. A, *Deposition of Sherry Foxx*, pp. 80-81. Therefore, the court will not strike the affidavit based on Safeco's argument that it is not based on personal knowledge.

Because the court will not strike Sherry Foxx's affidavit based on either of Safeco's arguments that the affidavit is improper, the court denies the portion of Safeco's motion to strike requesting the court to strike the affidavit.

### B. Transcripts of Telephone Conversations

Technically, "exhibits used by a party at summary judgment stage must be authenticated at that time." *White v. Wells Fargo Guard Serv's.*, 908 F. Supp. 1570, 1519 (M.D. Ala.,1995); *see also* Fed. R. Civ. P. 56(e). However, to effectuate the spirit and purpose of Rule 56, the court has exercised its "ample discretion to call upon the parties to remedy the defects[] by submitting supplemental affidavits or otherwise," *Watson,* 622 F.2d at 123, by ordering USAA to submit materials to authenticate the transcripts. *See July 22, 2005 Order on Motion to Strike*, Doc. 27. USAA has complied with the court's Order to authenticate the transcripts. *See Plaintiff's July 29, 2005 Evidentiary Submission*, Doc. 29. Therefore, Safeco's argument that the transcripts are not authenticated is now moot. Accordingly, the court denies the portion of Safeco's motion

7

requesting that the court strike the transcripts, but will not consider the unauthenticated transcripts.

### C. Insurance Policy

In support of its motion, USAA also submitted an unauthenticated copy of Sherry Foxx's USAA insurance policy. *See* Doc. 17, Ex. B.  Safeco objects to the insurance policy because it is not sworn or certified.

As noted above, exhibits submitted in support of a summary judgment motion must be authenticated. *White*, 908 F. Supp. at 1519.  However, in response to Safeco's motion to strike, USAA has submitted a certified copy of the policy.  Again, the court will exercise its discretion to permit USAA to remedy the technical defect, and will consider the certified copy of the policy in deciding the motion for summary judgment. Consequently, Safeco's argument that the court should strike the insurance policy is moot.  Therefore, the court denies Safeco's motion to strike the first copy of the insurance policy submitted with the original summary judgment motion.

However,  in ruling on the motion for summary judgment, the court will not rely on the unauthenticated copy of the policy attached to USAA's summary judgment motion.  Rather, the court will consider the certified copy of the policy submitted by USAA as Exhibit C to its response to Safeco's motion to strike.  *See* Doc. 23, Ex. C.

## II. UNDISPUTED FACTS

In October, 2001, Earl Foxx, then approximately 32 years old, lived with his sister, Sherry Foxx.[3]  *See* Doc. 21, Ex. A, *Deposition of Sherry Foxx*, p. 35; Doc. 19, *Supplemental*

---

[3]When he was younger, Earl Foxx sustained a head injury in an automobile accident. Doc. 21, Ex. A, *Deposition of Sherry Foxx*, p. 23.  Earl Foxx's whereabouts are currently unknown.  *Id*. at 88-89; Doc. 22, Ex. A, *Deposition of Sherry Foxx*, pp. 6-17.

*Evidentiary Submission*, Ex. A, *Notarized Affidavit of Sherry Foxx*. Earl Foxx did not have a driver's license at the time of the accident, and apparently never had one. *See* Doc. 19, *Supplemental Evidentiary Submission*, Ex. A, *Notarized Affidavit of Sherry Foxx*; Doc. 21, Ex. A, *Deposition of Sherry Foxx*, pp. 38, 87; *but see* Doc. 21, Ex. A, *Deposition of Sherry Foxx*, p. 65. When Earl Foxx was not working odd jobs at restaurants and construction sites, Sherry Foxx would take him to the office with her, where she worked as an Army recruiter. *See* Doc. 21, Ex. A, *Deposition of Sherry Foxx*, pp. 35-37. On those occasions, Earl Foxx would often walk to the mall and "hang out," and sometimes he would sit in her car outside the recruiting office and listen to the radio with the keys in the ignition. *See id*. at 85. Sherry Foxx had never given Earl permission to drive her car. Doc. 17, Ex. F, *Earl Foxx Telephone Call Transcript*, p. 5. To Sherry Foxx's knowledge, Earl Foxx had never driven her car before the day of the accident. Doc. 19, *Supplemental Evidentiary Submission*, Ex. A, *Notarized Affidavit of Sherry Foxx*.

On the day of the accident, Sherry Foxx picked her brother up around noon and took him to the office because he was bored. *See* Doc. 21, Ex. A, *Deposition of Sherry Foxx*, p. 39. He sat in the car and listened to the radio with the keys in the ignition. *See id*. at 41. At some point, Sherry Foxx had to run an errand. *Id*. She took her keys from Earl Foxx, told him she was leaving on an errand, put the keys in her desk, and left to run the errand in a government vehicle. *Id*. at 41-43.

While Sherry Foxx was gone, Earl Foxx took the keys out of the desk and went on an errand of his own in Sherry Foxx's car. *See* Doc. 17, Ex. F, *Earl Foxx Telephone Call Transcript*, p. 5. While he was out running his errand, he rear-ended the Glazes' car. *See id*. at p. 8. Later, in a telephone conversation with USAA, Earl Foxx stated that he did not customarily

drive the car to the mall, that he never drove the car before, and that Sherry Foxx had never given him permission to drive her car. *See id* at p. 5. He stated that driving the car was "a mistake that [he] made and [he] was thinking [he] probably could slip here [sic] and then slip back without [Sherry Foxx] knowing." *Id*. at p.8.

When Sherry Foxx returned to the recruiting office, she saw that her car was gone and she "panicked... [she] kept thinking, 'I know he didn't do this. I know he wouldn't dare take my vehicle.'" *See* Doc. 21, Ex. A, *Deposition of Sherry Foxx*, p. 44. She later stated in an affidavit,

> Earl Foxx took my car without my permission or knowledge immediately prior to his involvement in this accident. He did not have my permission to drive this vehicle on the date of the accident.

Doc. 19, *Supplemental Evidentiary Submission*, Ex. A, *Notarized Affidavit of Sherry Foxx*.

In response to USAA's summary judgment motion, Safeco has submitted evidence that Sherry Foxx routinely allowed Earl Foxx to sit in her car with the keys in the ignition and listen to the radio. Safeco argues this activity establishes a pattern that raises a factual question as to whether Sherry gave her Earl implied permission to drive the car at the time of the accident.

### III.  STANDARD OF REVIEW

When a district court reviews a motion for summary judgment under Federal Rule of Civil Procedure 56, it must determine two things: (1) whether any genuine issues of material fact exist; and, if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). To succeed, the moving party bears the burden of establishing both prongs of the summary judgment test. The nonmoving party may defeat the motion for summary judgment by establishing *either* genuine issues of material fact or that the movant is not entitled to judgment as a matter of law.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) (quoting Fed. R. Civ. P. 56). The party seeking summary judgment can meet this burden by offering evidence showing no dispute of material fact, or by showing that the nonmoving party's evidence fails to meet some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." 477 U.S. at 323.

When the moving party has met his burden, Rule 56 (e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P 56 (e)). The responding party does not need to present evidence in a form admissible at trial; "however, he may not merely rest on his pleadings." 477 U.S. at 324. "The plain language of Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In responding to a properly-supported motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 89 L. Ed. 2d

538, 106 S. Ct. 1348 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 , 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

After both parties have addressed the motion for summary judgment, the court must grant the motion if no genuine issues of material fact exist and if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which the jury could reasonably find for the nonmovant. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc*., 849 F.2d 570, 575 (11th Cir. 1998). The court should not weigh the evidence, nor make determinations as to the credibility of witnesses because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Thus, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Graham*, 193 F.3d at 1282 (quoting *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988)).

### IV. DISCUSSION

In response to USAA's motion for summary judgment, other than filing a motion to strike USAA's evidence (which as discussed above the court denies) Safeco does not challenge USAA's evidence that Sherry Foxx did not give Earl Foxx permission to use her car. Rather,

12

Safeco argues that, although Sherry Foxx did not expressly tell Earl Foxx he had permission to drive her car, Sherry Foxx's habit of occasionally allowing him to sit in the car with the keys in the ignition, unsupervised and listening to the radio, at least gives rise to a question of fact as to whether she gave her brother <u>implied</u> permission to drive her car. *See Safeco's Reply Brief*, Doc. 21, at 3-4.

Under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), when a case is before the court on its diversity jurisdiction, the court must apply the substantive law of the state in which it sits, including that state's choice-of-law rules. *See McMahan v. Toto*, 256 F.3d 1120, 1131 (11th Cir. 2001). In Alabama, "a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction." *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991). The USAA policy does not contain a choice of law provision. The court has before it no evidence showing where Sherry Foxx entered into the insurance contract. The policy is titled "South Carolina Auto Policy," and states that the insured car is housed principally at Myrtle Beach, South Carolina. *See* Doc. 23, Ex. C, *Foxx's USAA Insurance Policy*, p. 4. These facts could indicate that the USAA and Sherry Foxx entered into the contract in South Carolina. However, the policy gives a Birmingham, Alabama post office box address for Sherry Foxx, who currently serves her country in the United States Army. Although the parties have not expressly shown the court why Alabama law applies, both parties cite Alabama law as the controlling contract law in this case. Further, the court finds that South Carolina law thoroughly supports the reasoning in this opinion. *See Catawba Ins. Co. v. Smith*, 518 S.E.2d 291 (S.C. 1999) (holding that previous permissive use alone is not sufficient to establish implied permission, and finding, despite a

pattern of permission to <u>drive</u> a car on previous occasions, that the driver who took the car keys from his sleeping mother's mattress to use the car without her knowledge had no express or implied consent to operate the car at time of his accident); *S. Farm Bureau Cas. Ins. Co. v. Hartford*, 379 S.E.2d 739 (S.C. 1971) (holding that consent must run to the person who uses the insured vehicle as well as to the use he or she makes of the vehicle); *Allstate Ins. Co. v. Federated Mut. Implement & Hardware Ins. Co.*, 161 S.E.2d 240 (S.C. 1968) (holding that implied permission to use a car for a particular purpose did not include implied permission to deviate from intended purpose to run a personal errand); *Crenshaw v. Harleysville Mut. Cas. Co.*, 246 S.E.2d 549 (S.C. 1965) (holding that permission to use a covered vehicle for a particular purpose does not imply permission to use it for all purposes). Thus, the result would be the same whether Alabama or South Carolina law applied, and the court will apply Alabama law as cited by the parties.

Under Alabama law, courts must strictly construe an insurance contract against the insurer and liberally construe it in favor of the insured. *Cotton States Mut. Ins. Co. v. Michalic*, 443 So. 2d 927, 930 (Ala. 1983) (overruled on other grounds). However,

> to support an inference that one had implied permission to use the automobile of another for his own purposes, there must be a course of conduct engaged in by the parties over a period of time prior to the use in question or else there must be particular circumstances to justify an inference of implied permission. When one relies on a "course of conduct," the evidence must tend to show a course of conduct or practice on the part of the person whose permission must be had, with knowledge of the existing facts and circumstances, that supports a reasonable inference of permissive use of the automobile.
.

*Sleight v. State Farm Mut. Auto. Ins. Co.*, 516 So. 2d 616, 618 (Ala. 1987) (quoting *Pettis v. State Farm Mut. Auto. Ins. Co.*, 239 So. 2d 772, 775 (1970)).

In applying Alabama's test for implied consent to use a vehicle, this court fails to find anywhere in the record a question of fact as to whether Sherry Foxx gave Earl Foxx permission–expressed or implied– to use her car after she took her keys away from him.  In *Pettis*, the only case cited by Safeco, the Alabama Supreme court failed to find even a <u>scintilla</u> of evidence of implied permission where one teenager had allowed his friend to drive his car on several occasions, but did not give express permission on the occasion when his friend took his car and had an accident.

In that case, Michael Kelly and his friend, Robert Salley, Jr., worked at the same supermarket.  239 So. 2d at 774.  Before the day of the accident, on three occasions Kelly gave Salley express permission to drive the car to lunch.  *Id*.  On other occasions, Kelly gave others permission to drive the car, and Salley rode with them.  *Id*. at 774-75.  Kelly testified that "he never allowed anyone to use the automobile without his consent, and no one used it without his express permission, except Salley, Jr., on the single occasion of the accident."  *Id*. at 775. Kelly expressly told Salley not to use the car without his permission.  *Id*.  Then, one day, Kelly left the car in the supermarket parking lot and went to see a movie, knowing that Salley would remain at work to clean up the store.  *Id*.  Although the car keys were lost, someone could start the engine by turning the ignition switch without the key.  *Id*.  After he got off work, Salley started the car and drove off in pursuit of some friends in another automobile. *Id.*  While on this personal mission, he wrecked the car.  *Id*.  Like Earl Foxx in this case, Salley later acknowledged that he had taken the car without the owner's permission.  *See id.*

The two cases are very similar.  Like the parties in *Pettis*, neither Sherry Foxx nor Earl Foxx ever believed that Earl Foxx had express or implied permission to drive the car at the time

15

in question, though some form of access to the car had been permitted at other times in the past. *See* Doc. 19, *Supplemental Evidentiary Submission*, Ex. A, *Notarized Affidavit of Sherry Foxx*; Doc. 17, Ex. F, *Earl Foxx Telephone Call Transcript*, p. 5, 8. However, unlike Kelly in *Pettis*, Sherry Foxx had *never* allowed Earl Foxx to drive the car before, but had only allowed him to use her car keys to turn on the car radio. *See* Doc. 19, *Supplemental Evidentiary Submission*, Ex. A, *Notarized Affidavit of Sherry Foxx* . Therefore, like the court in *Pettis*, this court "fail[s] to find from the evidence where [Sherry Foxx's] course of conduct. . . was such as to signify, and be compatible only with, an understanding consent amounting to permission to use the automobile for [Earl Foxx's] personal purpose on the occasion in question." *See* 239 So. 2d at 775.

In fact, in this case, the evidence submitted on summary judgment only leads to the conclusion the Sherry Foxx did <u>not</u> give Earl Foxx permission to drive her car when he did. As Safeco recognizes, the Sherry Foxx's only practice was to <u>not</u> allow Earl to drive the car anywhere, but to just permit him to sit in the car and listen to the car radio. Furthermore, in the particular instance in question, Sherry Foxx <u>took her keys away</u> from Earl and placed them in her desk before leaving the car at work. Her action clearly indicated that, at the time, Earl did not even have permission to simply sit and listen to the radio as he had been permitted to do in the past–and certainly did not have permission to <u>drive</u> the car, which he had never done even once. *See* Doc. 21, Ex. A, *Deposition of Sherry Foxx*, p. 41-43. Therefore, the previous "course of conduct or practice. . . of the person whose permission must be had," *see Sleight*, 516 So. 2d at 618; *Pettis*, 239 So. 2d at 775, as well as her conduct in the "particular circumstances" in question, *see Sleight*, 516 So. 2d at 618, and the fact that neither Sherry Foxx nor Earl Foxx ever

16

believed Earl had Sherry's permission to take the car on an errand, positively demonstrate that Earl Foxx did <u>not</u> have Sherry Foxx's permission to drive her car at the time of the accident.

## CONCLUSION

For the reasons stated above, the court denies Safeco's motion to strike Sherry Foxx's affidavit. The court will not rely on the unsigned copy of the affidavit attached to USAA's summary judgment motion. However, the court will consider the properly sworn and notarized copies of that affidavit submitted by USAA on June 2 and 17, 2005. *See Plaintiff's Supplemental Evidentiary Submission*, Doc. 19, *and Plaintiff's Response to Motion to Strike*, Doc. 23, Ex. A.. Further, the court denies as moot Safeco's motion to strike as to the transcripts of telephone conversations that were properly authenticated and resubmitted on July 29, 2005. *See Plaintiff's July 29, 2005 Evidentiary Submission*, Doc. 29. In addition, the court denies as moot Safeco's motion to strike the first copy of the insurance policy from the summary judgment record. The court will not rely on the unauthenticated copy of the policy attached to USAA's summary judgment motion. However, the court will consider the certified copy of the policy submitted by USAA on June 17, 2005 as Exhibit C to its response to Safeco's motion to strike. *See* Doc. 23, Ex. C.

Finally, because the court can find no reasonable indication in the record that would give rise to any inference that Sherry Foxx gave Earl Foxx her express or implied permission to use the car on the occasion in question; because the evidence clearly shows that Earl Foxx did <u>not</u> have Sherry Foxx's permission to drive the car; and because the policy at issue specifically states that USAA owed no coverage for people operating Sherry Foxx's car "without express or implied permission," as a matter of law, USAA owes no coverage for the Glazes' claims against

Earl Foxx.  Therefore, the court grants summary judgment in favor of USAA and dismisses the case with prejudice.

The court will enter a separate order in conformance with this memorandum opinion.

DONE and ORDERED this 10th day of August, 2005.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE